Matthew G. McHenry, OSB 043571
Levine & McHenry LLC
1050 SW Sixth Avenue, Suite 1414
Portland, Oregon 97204
503-546-3927
email: matthew@levinemchenry.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:24-cr-00383-AN-13 |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S SENTENCING |
| vs. | ) | MEMORANDUM |
| | ) | |
| | ) | |
| JESSICA GONZALEZ | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

On May 14, 2026, defendant Jessica Gonzalez will come before the Court for sentencing, having pleaded guilty on December 11, 2025, to one count of Conspiracy to Defraud the United States. Ms. Gonzalez was arrested for the instant offense on October 22, 2024, and released on conditions that same day. At the time of sentencing, she will have 1 day of custody that would be applied to any custodial sentence imposed.

Ms. Gonzalez will appear for sentencing out of custody. She has been under the supervision of United States Pretrial Services in the Northern District of California since October 22, 2024. During her approximately 19

1

months of pretrial supervision, Ms. Gonzalez has had no violations of any kind. Rather, she has resided and worked in Pomona, California during that time. Ms. Gonzalez lives in a home with her husband (co-defendant Edgar Basilio Hernandez), her cousin by marriage, Cristina Escalante (also a co-defendant), and her two young autistic sons.

For the reasons set forth below and in accompanying filings, the Court should sentence Ms. Gonzalez to time-served with a three-year term of supervised release, with conditions to include a period of home detention.

## I.    Ms. Gonzalez's criminal conduct.

Ms. Gonzalez's criminal conduct is documented in the PSR. PSR ¶¶ 22-41. In 2023, law enforcement discovered a large-scale conspiracy in which members used fraudulently obtained SNAP benefit information to purchase SNAP-eligible goods such as baby formula and energy drinks and resold these goods on the black market. Ms. Gonzalez was not aware of or a participant in the full scope of the conspiracy. Rather, she was part of the "transport crew" identified by the government.

At the direction of her mother-in-law, co-defendant Ana Escalante, Ms. Gonzalez and her husband, co-defendant Edgar Basilio Hernandez, rented storage units in Washington and California. They received shipments of fraudulently obtained baby formula at these units and arranged for

2

transport of the goods to California where they were delivered to a warehouse. Ms. Gonzalez at times used her personal vehicle to transport goods. Other times she would use a rented U-Haul. Ms. Gonzalez was only involved in baby formula, and not any of the other goods that were obtained by the larger conspiracy. She was provided shipping and logistical information by Ana Escalante. She was paid a nominal fee for her services by Ana Escalante.

## II.    Guideline Calculations under the Plea Agreement and PSR

The plea agreement is based on USSG § 2B1.1.  Under the plea agreement the parties agree to a base offense level of 6, with a 16-level increase for loss amount (more than $250,000.00) and a 2-level increase for ten or more victims.  PSR ¶ 6. The parties agree to a two-level downward adjustment for early resolution and a three-level downward adjustment for acceptance of responsibility under § 3E1.1. *Id.* Ms. Gonzalez also qualifies for an additional 2-level reduction as a Zero Point Offender, resulting in a final adjusted offense level of 17 under the plea agreement. *Id.* The government will recommend the low-end of the final guideline range determined by the Court after all adjustments. Ms. Gonzalez seeks a sentence of time-served with a three-year term of supervised release.

The presentence report calculates a final offense level of 19, as it does not account for the 2-level downward adjustment for early resolution that is set forth in the plea agreement, nor any motions for departure filed by the government. The PSR recommends a downward variance from the advisory guidelines, a 24-month sentence, a

## III.    A sentence of time-served with supervised release is sufficient but not greater than necessary to achieve the purposes of sentencing.

As this Court knows, the Sentencing Guidelines are advisory, and one factor among many to be considered in fashioning an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). *See also United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007) ("ultimately [the court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence").

A court's "*overarching duty* [is to] impose a sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(a)(2)." *Pepper v. United States*, 131 S.Ct. 1229, 1242 (2011) (emphasis added). *Pepper* further emphasized the need for individualized sentencing, reiterating "the principle that 'the punishment should fit the offender and not merely the crime.'" 131 S.Ct. at 1240 (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)).

4

Supervised release with probation-like conditions—including a period of home-detention—is an effective and appropriate sentence regardless of the advisory guidelines. Here, a sentence of supervised release would acknowledge the true import of *all* the goals of section 3553(a), including general deterrence. Prison is not required, nor always warranted, for even the most serious of offenses. "Section 3553(a) . . . does not require the goal of general deterrence be met through a period of incarceration." *United States v. Edwards*, 595 F.3d 1004, 1016 (9th Cir. 2010) (where defendant convicted of bankruptcy fraud while on probation for state fraud conviction and guidelines range was 27–33 months prison, sentence of probation with seven months of house arrest appropriate). In fact, supervision as a deterrent and punishment was specifically contemplated by Congress in enacting Section 3553(a) as something the Courts should employ regularly in lieu of prison: "It may *very often* be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." *Id.* at 1016 n.9 (quoting Senate Report No. 98-225 on the Comprehensive Crime Control Act of 1983) (emphasis added).

This is so because a supervised release term is "a substantial restriction of freedom." *Gall*, 552 U.S. at 48. *See also id.* (probation

conditions "substantially restrict [a defendant's] liberty); *United States v. Ruff*, 535 F.3d 999, 1004 (9th Cir. 2008) (noting supervised release is "quite oppressive" while sentencing defendant to one day jail and supervised release for conviction for embezzling $650,000.00 from non-profit organization, where guideline range was 30–37 months). Supervised release with no further incarceration is an appropriate and well-established sanction for non-violent first-time offenders. *E.g., United States v. Ruff*, 535 F.3d 999 (9th Cir. 2008) (embezzling case involving $650,000 stolen from non-profit organization over course of three years, where guidelines were 30-37 months, sentence of one day in jail and supervised release for three years reasonable in part because conditions of supervised release are "quite oppressive given that [defendants on supervised release are] subject to standard conditions that substantially restrict their liberty"); *United States v. Coughlin*, 2008 WL 313099 (W.D. Ark. Feb. 1, 2008) (unpub.) (where former Walmart CEO who embezzled money and evaded taxes faced guideline range of 33-41 months, sentence of probation with home detention for 27 months imposed in part because "Home detention and probation can be severe punishments . . . hugely restrictive of liberty, highly effective in the determent of crime and amply retributive;" characterizing his punishment as an act of leniency "deprives sentencing courts of a valuable

6

and effective form of punishment."); *United States v. Campbell*, (D. Or., No. 3:05-cr-00117-SI-1, 9/27/2007) (in bank robbery case with guideline range of 57 months, court sentences to probation on condition of six months home detention in part because of post offense rehabilitation and effect on innocent child).

**IV.    The fraud guidelines lack an empirical basis.**

Ms. Gonzalez's based offense level is increased by 267%--from 6 to 22—due to the alleged "loss amount" under USSG § 2B2.1 (more than $1,500,000).  However, this required guideline increase is unmoored to any facts specific to the case, or to the personal characteristics of Ms. Gonzalez. The court can depart from the guidelines for this reason.

Indeed, while the government asserts that the value of the fraudulently obtained products in the conspiracy was over $2.4 million, there is no evidence whatsoever that Ms. Gonzalez saw anything close to that level of revenue from her activities.  She was paid by Ana Escalante as a laborer— receiving a set fee of around for each transport trip she assisted in. She was not privy to the amount of money Escalante was making as the director of the baby formula scheme, nor even how the formula was being obtained before it arrived at the storage facilities.

Here, the 16-level increase from the loss amount table overstates the seriousness of the offense and Ms. Gonzalez's involvement in it. These are appropriate grounds to depart from the guidelines and impose a non-custodial sentence. *E.g.*, *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012) (departing from 87-month guideline range to probation in part because the $5 million loss amount was unfair proxy for culpability of defendant who was acting at direction of others); *United States v. Milne*, 384 F.Supp.2d 1309 (E.D. Wis., 2005) (in bank fraud case where guidelines 18 to 24 months court sentences to 6 months jail and 6 months home confinement for various reasons, noting that "With their almost singular focus on loss amount, the guidelines sometimes are insufficiently sensitive to personal culpability").

In fact, the USSG enhancements under the loss table in § 2B1.1 are arbitrary, not based on any empirical data whatsoever. Indeed,

> "[p]erhaps the greatest consensus among federal trial judges about the lack of empirical data to support a guideline is the fraud guideline. The fraud guideline, 2B1.1, can result in a guideline range, in a fairly typical high-end loss case, "equal to first-degree murder and three times longer than 'second degree murder.'" There is simply no empirical basis to justify this ridiculous result, or for that matter, any of the other thousands of fraud sentences informed by the fraud guideline each year.

Mark W. Bennett, *Addicted to Incarceration: A Federal Judge*

*Reveals Shocking Truths About Federal Sentencing and Fleeting Hopes for*

*Reform* (April, 2018), <u>Federal Sentencing Reporter</u>; *See also United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012) (fraud guideline reflects "an ever more draconian approach to white collar crime, unsupported by any empirical data").

A district court's sentencing discretion includes the option to vary from the guidelines "based on a policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, 555 U.S. 261, 264 (2009); *Kimbrough v. United States*, 552 U.S. 85 (2007) ("The Government acknowledges that the Guidelines are now advisory and that, as a general matter, 'courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines'"). If a court disagrees with a policy underlying a guideline, or believes the guideline is unsupported by empirical data, this is grounds to impose a sentence outside the advisory guideline.

## **CONCLUSION**

Here, for reasons set forth here, in the presentence report and accompanying filings, the Court should impose a sentence of time-served, followed by a three-year term of supervised release, with conditions to include a period of home detention.

Respectfully Submitted this 6th day of May 2026:

/s/ *Matthew G. McHenry*
Matthew G. McHenry
Counsel for Jessica Gonzalez